IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

U.S. DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

JUL 17 2015

CHRIS R. JOHNSON, Clerk
By _____ Deputy Clerk

| | |
|---|---|
| **LOTTIE JEAN PARHAM and** | |
| **ROSIE PARHAM** | **PLAINTIFFS** |
| | |
| VS.   CASE NO.: 15-1048 | |
| | |
| **HABILITATION CENTER LLC, f/n/a** | |
| **ACADIA HEALTHCARE, INC.,** | |
| **MILLCREEK OF ARKANSAS,** | |
| **and MATT WILSHIRE, individually and as** | |
| **agent for Corporate Defendants; DOUG FREEMAN, individually** | |
| **and as agent for Corporate Defendants;** | |
| **BRENDA MATHEWS, individually and as agent for** | |
| **Corporate Defendants** | **DEFENDANTS** |

## COMPLAINT

The Plaintiffs, Lottie Jean Parham and Rosie Parham, by and through their attorney, and for their Complaint state:

### I

### INTRODUCTION

1. This is an action for declaratory, injunctive, and monetary relief, brought by Plaintiffs, Lottie Jean Parham and Rosie Parham, against their employers, Habilitation Center, LLC, d/b/a Millcreek of Arkansas, and other named Defendants. The Plaintiffs assert that they have been subjected to unlawful discrimination on the basis of race, age and gender, in job assignments, promotions, employment conditions and benefits, discipline, and discharge, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq., as amended by omnibus Civil Rights Act of 1991; the Civil Act of 1866, 42 U.S.C. § 1981 and the Arkansas Civil Rights Act, Arkansas Code Annotated §16-123-101 et seq. In addition, the Plaintiffs,

1

allege that they suffered retaliation under state and federal law, because of their refusal to aid and abet their superiors in discriminatory treatment of other employees based on race, age and gender; for breach of contract, wrongful discharge, the tort of outrage, and intentional infliction of emotional distress, under state law.

## II

## JURISDICTION AND VENUE

2. This Court has jurisdiction to hear Plaintiffs' claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C., § 2000e 5(f)(3), which provides for injunctive and remedial relief from discrimination on the basis of equal pay, age, race and gender. Jurisdiction of the Court is also invoked pursuant to 28 U.S.C. § 1343 (3) and (4), to hear Plaintiffs' claims of deprivation of rights guaranteed by 42 U.S.C. § 1981 which provides for the equal rights of all citizens, regardless of race, age and gender, to make and enforce contracts; this court has jurisdiction of state law claims under pendent jurisdiction.

3. Plaintiffs each filed EEOC Intake Questionnaires and formal Charges of Discrimination with the Equal Employment Opportunity Commission (hereafter "EEOC"), charging discrimination on the part of Millcreek of Arkansas. True copies of the formal charges were appended to the original Complaint and First Amended Complaint previously dismissed by this Court without prejudice, and are incorporated herein by reference as if set forth word-for-word herein. Plaintiffs were each issued Right to Sue Letters from the EEOC within 90 days of filing of the initial complaint in this action. (true copies of the Right to Sue Letters were appended to the Original Complaint as Exhibits B1 and B2 respectively, and are incorporated herein by reference as if set forth word-for-word).

## III

## The PARTIES

4. Plaintiff, Lottie Parham, (hereinafter "Lottie"), is a 58 year old black female citizen of the United States, and was at all times relevant a resident of Kingsland, Cleveland County, Arkansas. Lottie was a non-probationary employee of Millcreek of Arkansas. Over the course of employment, Lottie suffered adverse employment actions by agents and/or officers of Millcreek and Habilitation acting within the scope of their employment; Lottie was fired on October 13, 2011.

5. Plaintiff, Rosie Parham, (hereinafter "Rosie"), is a 59 year old black female citizen of the United States, and was at all times relevant a resident of Bearden, Ouachita County, Arkansas; Rosie was a non-probationary employee of Millcreek of Arkansas. Over the course of employment, Lottie suffered adverse employment actions by agents and/or officers of Millcreek and Habilitation acting within the scope of their employment; Lottie was fired on October 13, 2011.

6. Defendant, Millcreek of Arkansas (Millcreek) operates a private, special needs facility, providing educational, developmental and medical services to disabled children and adolescents. Millcreek's offices and facilities are located at 1810 Industrial Drive, Fordyce, in Dallas County, Arkansas 71742. Millcreek operates pursuant to special licenses and permits from, and receives its primary funding through, the Arkansas Department of Human Services' Department of Long Term Care, using State and Federal funds, including medical funds. As such Millcreek is a Medicaid provider. Millcreek's contracts and the regulations of its funding sources require that Defendant operate as an equal opportunity employer, and require Millcreek to protect and enforce the rights of its employees as well as its residents under State and Federal laws. Millcreek is an employer for the purpose of this action.

7. Matt Wilshire (hereinafter "Wilshire") is a white male, who at all times relevant was the Chief Administrative and/or Chief Executive Officer at Millcreek, where the Plaintiffs worked. Wilshire was a general supervisor over the Plaintiffs, for purposes of job assignment, promotion, conditions of employment, benefits, discipline and discharge; each Plaintiff was within the direct authority of Wilshire. During Wilshire's tenure as Plaintiffs' supervisor, Wilshire took adverse employment actions towards Plaintiffs; most recently, Wilshire took an active individual role in the employment discrimination as set out more specifically infra; Wilshire also fired, and/or directed, approved and acquiesced in the wrongful discharge of Plaintiffs.

8. Brenda Mathews (hereinafter "Matthews") is a white female. At all times relevant to this Complaint, Matthews was the Program Director and/or Director of Nursing for Millcreek. Matthews acted in a supervisory capacity over Plaintiffs. During Matthews' tenure as Plaintiffs' supervisor, Matthews took an active individual role in the employment discrimination as set out more specifically infra; Matthews also fired, and/or recommended, approved and acquiesced in the wrongful discharge of Plaintiffs. Mathews refused to take proper action to prevent the wrongful discharge complained of herein.

9. Doug Freeman (hereinafter "Freeman") is a younger white male, who at all relevant times was an agent of Habilitation Center; assigned as a special officer and agent at Millcreek with authority to discipline and discharge Millcreek employees. During Freeman's tenure as Plaintiffs' supervisor, Freeman took an active, individual role in the adverse employment actions towards Plaintiffs. Freeman's actions included firing and/or directing, approving and acquiescing in the wrongful discharge of Plaintiffs. Freeman refused to take any action to prevent the wrongful discharges complained of herein.

10. Habilitation Center, LLC, (hereinafter "Habilitation") maintains a substantial place of business at 830 Crescent Drive, Suite 610, Franklin, Tennessee 37067 and is the parent company of Millcreek. Habilitation exercises direct authority and administrative control over the operations at Millcreek, including hiring, pay, job placement, promotion, discipline and discharges. Habilitation also controls interpretation, reporting, investigation and enforcement of the performance and security regulations each Plaintiff is accused of violating as grounds for discharge. Habilitation directed, approved, acquiesced in, aided and/or adopted the actions of Millcreek as relate to adverse employment actions taken against Plaintiffs. Habilitation's registered agent is CT Corporation System, which may be served at 800 South Gay Street, Suite 2021, Knoxville, Tennessee 37929-9710 and/or 124 West Capitol Avenue, Suite 1900, Little Rock, AR 72201.

## IV

## Background

11. Plaintiff Lottie was initially employed at Millcreek in 1992 as a Developmental Trainee. At the time of her discharge, Lottie had attained the position of Unit Coordinator at the Boys' Ranch Unit in the Millcreek facility.

12. Plaintiff Rosie was initially employed at Millcreek on or about August 17, 1993 as a Developmental Trainee. Although she was qualified for promotions, and had applied for promotions, Lottie was a Developmental Trainer at the time of her discharge.

13. From 1992 until October 2011, Caucasians, males and younger job applicants and employees, who had similar or less training and experience than the Plaintiffs, were hired, and started at higher pay and benefits than did Plaintiffs. Such non-priority class employees were able to advance in pay and rank more rapidly, were afforded less oppressive work conditions and

5

non-priority employees were not accused, disciplined or fired for similar acts for which Plaintiffs allegedly violated company policy or existing laws. Non-priority applicants and employees who had similar or less training and experience than the Plaintiffs, but who received different and better treatment by Defendants included: Gary Ramis (younger male), Ken Henderson (younger male), Jason Mitchell (younger male), Percy Lawson (younger male), Andre West (younger male), Wanda Stringfellow (younger female), Lynette Smith (younger female), Barbara Hall (younger female), Mike Gatling (younger male), Candace Davis (younger female), Amy (last name unknown) a younger, white female developmental trainer; David (last name unknown) a younger, white male security personnel, Charles Potter (younger male), Bobby Ozmont (younger male), Dorothy Budmanson (younger female), Cynthia Scott (younger female), Latasha Rochelle (younger female), Chanale Miller (younger female), Harvey Goodmant (younger male), Sharon Johnson (younger female), Alvin (last name unknown), younger black male developmental trainer, Joe Brazil (younger male).

## V

## FACTUAL ALLEGATIONS

16. Plaintiffs specifically re-allege and incorporate by reference each and every allegation contained in paragraphs 1-15, above.

17. As employees of Defendant Millcreek, pursuant to A.C.A. § 12-18-402 each of the Plaintiffs was a <u>mandatory maltreatment reporter</u>. Thus, each of the Plaintiffs had an obligation to report any incidents of student maltreatment of which she was aware. From time to time, Plaintiffs were also required to give witness statements of details concerning incidents of which they were aware.

18. Each Plaintiff was trained to use physical restraint of out-of-control students, a technique, known as "put down", where a staff clears an area of objects or conditions which could pose a danger of harm to the student or staff; then one or more staff persons would physically restrain the student and make him/her lie down on the floor or ground.

19. At approximately 1:00 p.m. on September 28, 2011, two Millcreek students (Resident 690 (JM) and Resident 667 (JT)) got into a fight. At that time, the students were under the general supervision of Lottie, and under the immediate supervision of Rosie, Latasha Rochelle, Dorothy Buchanan and Chanale Miller.

20. Despite efforts by the Developmental training staff, JT would not desist from the fight; Latasha and Chanale restrained JT while Rosie turned to prepare an area to 'put-down' JT.

21. Upon Lottie's return to the cottage, Ozmont and Potter reported to Lottie that during the time Rosie was turned away preparing for the 'put-down', Chanale attacked JT, Lottie in turn reported to her supervisor, based on what she had been told. Lottie's supervisor in turn reported the incident to Doug Freeman, based on what she had been told.

22. Freeman demanded Rosie and Lottie make "witness statements" accusing Chanale of maltreatment. Witnesses at the scene gave varied statements of what they saw, the gist of which were that there was an altercation between JT and JM, but no attack by Chanale on student JT.

23. Lottie did not see the incident, so she was unable to state whether any staff attacked the student. Rosie did not see the alleged attack and thus could not report that Chanale attacked the student. Latasha and Rochelle denied seeing Chanale attack JT.

7

24. Freeman demanded Rosie change her statement to accuse Chanale Miller of attacking the student. Having no knowledge whether Chanale attacked JT, Rosie refused to change her statement.

25. Freeman also demanded that Lottie change her statement, and to accuse Chanale Miller of abuse. Not being present at the time of the fight, Lottie refused to change her statement.

26. Chanale Miller was discharged for the altercation. Rosie, Lottie, Rochelle and Latasha were fired for failing to report Chanale's abuse. Rochelle later changed her statement to accuse Miller of fighting JT and Rosie of observing the attack without reporting it. As a result of Rochelle's changed report, Rochelle returned to work.

27. Plaintiffs were discharged allegedly for violation of a company performance and/or security rule or regulation, i.e., mandatory reporting of incidents of student maltreatment. However, white employees, male workers, and workers younger than forty years of age who acted in ways that would constitute violating the same or similar regulations were not accused of violation, disciplined or discharged. Employees receiving different and better treatment for the same or similar alleged actions, and who were not accused of violation and/or not disciplined and not discharged included: Gary Ramis, Ken Henderson, Jason Mitchell, Percy Lawson, Andre West, Wanda Stringfellow, Lynette Smith, Barbara Hall, Mike Gatling, Candace Davis, Amy (last name unknown) a younger, white female developmental trainer; David (last name unknown) a white male security personnel, Charles Potter, Bobby Ozmont, Dorothy Budmanson, Cynthia Scott, Latasha Rochelle, Harvey Goodmant, Sharon Johnson, Alvin (last name unknown), younger black male developmental trainer, Joe Brazil.

28. The Plaintiffs had each served probationary periods of employment. Post-probationary employees acquired certain rights of employment and protection, set out in employee handbooks, (see Exh. 1 attached) and were entitled to be free from arbitrary and capricious treatment by their employer.

29. Under Arkansas and Federal law the Plaintiffs acquired protection from conduct of the employer which violates the public policy of Arkansas as expressed in its Constitution and Laws; by virtue of covenants contained in the funding contracts between the Defendant Corporations and the State and Federal Governments, Plaintiffs acquired an expectation of continued employment except for cause.

30. Defendant Freeman as agent and representative of Habilitation working at Millcreek discriminatorily replaced blacks, females and older workers (including Plaintiffs) with white, younger workers and males. Freeman fired each Plaintiff without an objective or adequate interview of the eye witnesses and without meaningful investigation into the facts surrounding the incident which gave rise to the discharge. The Plaintiffs were each denied a meaningful pre-termination hearing or post-termination review.

31. Prior to the incident involved herein, both Parhams had exemplary work records, and had been commended for their job performance.

32. The discharge of Plaintiffs was arbitrary and capricious in that it was based on a flawed or non-existent investigation of the alleged grounds for discharge; was not grounded in a reasonable conclusion based on the information available to Wilshire, Freeman and Matthews, was intentionally designed to justify the removal of older workers, blacks and females; and was part of Defendants' pattern and practice of discrimination against its employees based on race, gender and age over the period of Plaintiffs' employment.

33. Both Plaintiffs met the qualifications for jobs assigned them. Each Plaintiff had satisfactorily performed all duties assigned by the employer. However, from time to time during their employment both Plaintiffs were passed over for job vacancies which would have been promotions. In particular, Lottie was passed over for higher position(s). Rosie was passed over for higher position(s). In each instance, promotions were given to non-protected class employees who had the same or less training or experience.

34. Although her performance and qualifications met or exceeded those of her younger, white and male co-workers who did receive promotions, Plaintiffs were provided no or comparatively fewer promotions and/or pay increases during their employment at Millcreek.

35. Plaintiffs were afforded inadequate pay, responsibilities and promotions when compared with their white, male, and younger co-workers.

36. Habilitation, having control over the operations at Millcreek, refused to enforce Federal and State Labor Laws to prevent discrimination against Plaintiffs. In fact, defendant Habilitation through Freeman affirmatively and intentionally directed the actions of Millcreek and its officers. Habilitation caused the harm to Plaintiffs as described herein; and is liable to the Plaintiffs for the acts of Millcreek and its officers.

37. Freeman fired each Plaintiff, without adequate, objective or meaningful investigation into the facts; prior to the discharge of Plaintiffs, Freeman terminated Lynette Smith, Donald Harnet, Renita Askew, under similar circumstances; Plaintiffs verily believe, and therefore allege, the actions of Freeman were intentional and malicious and did cause severe emotional distress and actual harm.

38. Prior to their discharge, Plaintiffs had each clearly and repeatedly reported the issues of race, gender and age discriminatory conduct to the human resource personnel, and to Wilshire, Matthews, and other top administrative personnel at Millcreek and Habilitation; the complaints were ignored and the actions complained of herein were intentionally condoned and

adopted, and/ or allowed to persist. Plaintiffs were subject to retaliation in the form of discharge for their complaints.

## VI

## COUNT I

## VIOLATION OF FEDERAL CIVIL RIGHTS

## •THE CIVIL RIGHTS ACT OF 1865 (42 U.S.C. § 1981)

## •THE CIVIL RIGHTS ACT OF 1964 "TITLE VII" (42 U.S.C. § 2000e, et seq.)

### Pay, Promotion and Working Condition Discrimination

39. Plaintiffs re-allege and incorporate by reference each and every allegation in paragraphs 1-38 of this Complaint as if fully set forth herein.

40. Defendants have discriminated against Plaintiffs in violation of **42 U.S.C. § 1981 and** Title VII by subjecting them to different treatment on the basis of their race, age and gender. The Plaintiffs have been disparately impacted and disparately treated as a result of Defendants' wrongful conduct and Habilitation's policies, practices and procedures.

41. Defendants have discriminated against Plaintiffs by subjecting them to discriminatory performance evaluations and rankings that affect pay, and through discriminatory denials of pay raises and promotions, in violation of Title VII.

42. Defendants' conduct has been intentional, deliberate, willful, malicious, and reckless and conducted in callous disregard of the rights of the Plaintiffs, entitling the Plaintiffs to damages for outrage and intentional infliction of distress, and to punitive damages.

43. As a result of Defendants' conduct alleged in this complaint, the Plaintiffs have suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits and other financial loss, as well as humiliation, embarrassment, emotional and physical distress and mental anguish.

44. By reason of Defendants' discrimination, the Plaintiffs are entitled to all legal and equitable remedies available for violations of **42 U.S.C. § 1981 and** Title VII, including an award of punitive damages.

45. Attorneys' fees and costs should be awarded under 42 U.S.C. § 2000e-5(k).

## COUNT II

## VIOLATION OF FEDERAL CIVIL RIGHTS

## •THE CIVIL RIGHTS ACT OF 1865 (42 U.S.C. § 1981)

## •THE CIVIL RIGHTS ACT OF 1964 (42 U.S.C. § 2000e, et seq.) ("TITLE VII"),

### Discrimination in Retaliation and Discharge

46. Plaintiffs re-allege and incorporate by reference each and every allegation in paragraphs 1-38 of this Complaint as if fully set forth herein.

47. Plaintiffs engaged in protected activities by complaining to persons in management positions and in Human Resources about race, gender and age discrimination—including but not limited to unequal meting out of discipline, pay disparity, denial of opportunities for professional advancement, favorable treatment towards male, Caucasian and younger employees and derogatory remarks made regarding Plaintiffs and other protected-class employees.

48. Defendants engaged in adverse employment actions against Plaintiffs because Plaintiffs engaged in protected activities. Such adverse employment actions have been in the form of subjecting them to unfavorable terms and conditions of employment, including inter alia, denials of promotions, disciplinary actions, subjection to a hostile working environment, and dismissal. The adverse employment actions have materially and adversely affected Plaintiffs' overall terms and conditions of employment, and ultimately their employment status.

49. A reasonable employee would find Defendants' retaliatory acts materially adverse and such acts would dissuade a reasonable person from blowing the whistle or from making or supporting a charge of discrimination.

50. Defendants' retaliatory acts against Plaintiffs were intended to and did deprive the Plaintiffs of their right to engage in protected activities.

51. Defendants' conduct has been intentional, deliberate, willful, malicious, and reckless, and conducted in callous disregard of the rights of the Plaintiffs, entitling Plaintiffs to damages for outrage and intentional infliction of emotional distress and punitive damages.

52. As a result of Defendant's conduct alleged in this complaint, Plaintiffs have suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits and other financial loss, as well as humiliation, embarrassment, extraordinary emotional and physical distress and mental anguish.

53. By reason of Defendants' discrimination, Plaintiffs are entitled to all legal and equitable remedies available, including an award of punitive damages.

54. Attorneys' fees and costs should be awarded under **42 U.S.C. § 1981 and** 42 U.S.C. § 2000e-5(k).

## COUNT III

## STATE LAW VIOLATIONS

### •ARKANSAS CIVIL RIGHTS ACT ("ACRA")

#### •Breach of Contract

#### •Outrage

55. Plaintiffs re-allege and incorporate by reference each and every allegation in paragraphs 1-38 of this Complaint as if fully set forth herein.

56. Defendants breached their contract of employment; intentionally inflicted upon Plaintiffs mental anguish and extraordinary emotional distress, and discriminated against Plaintiffs in violation of the Arkansas Civil Rights Act ("ACRA") by subjecting them to different treatment on the basis of their gender, race and ages. The Plaintiffs have been disparately impacted and disparately treated as a result of Defendants' wrongful conduct and its policies, practices and procedures.

57. Defendants have discriminated against the Plaintiffs by subjecting them to discriminatory denials of pay raises and discriminatory performance evaluations and rankings that affect pay; by subjecting them to a hostile work environment and retaliation, and by dismissing them without good cause due to their race, sex and gender, and because they complained of discriminatory treatment, in violation of the ACRA.

58. Defendant's conduct has been intentional, deliberate, willful, malicious, and reckless and conducted in callous disregard of the rights of the Plaintiffs, entitling them to punitive damages.

59. As a result of Defendants' conduct alleged in this complaint, the Plaintiffs have suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits and other financial loss, as well as humiliation, embarrassment, emotional and physical distress and mental anguish.

60. By reason of Defendants' discrimination, the Plaintiffs are entitled to all legal and equitable remedies available for violations of the ACRA, including an award of punitive damages.

61. Attorneys' fees and costs should be awarded under the ACRA.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

## VII
## PRAYER FOR RELIEF

WHEREFORE, in consideration of the foregoing, Plaintiffs' pray that the Court set this matter for Jury Trial; and upon Trial and verdict thereon, pray the Court issues a Judgment:

a. As to Defendants Millcreek and Habilitation, finding that the Defendants discriminated against the Plaintiffs with regard to Title VII of the Civil Rights Act of 1964; 42 U.S.C. § 1981; the ACRA, and related Arkansas statutes and rights.
b. As to Defendants Mathews, Wilshire and Freeman, finding that the Defendants discriminated against the Plaintiffs with regard to 42 U.S.C. § 1981; the ACRA, and related Arkansas statutes and rights.

14

c. Finding that the acts and conduct of the Defendants towards the Plaintiffs constitute unlawful discrimination on the basis of race, gender and age in violation of law.
d. Finding that the acts of these Defendants taken after protected activity constitute retaliation;
e. Finding that the acts and conduct of the Defendants constitute a pattern and practice of discrimination on the basis of race, gender and age;
f. Finding that the acts and conduct of the Defendants constitute Breach of Employment Contract, wrongful discharge, the Tort of Outrage and the Intentional Infliction of Emotional Distress;
g. Ordering that Plaintiffs be reinstated to employment, promoted to positions appropriate for their experience, expertise and length of employment; awarding them back pay and benefits they would have attained absent unlawful discrimination. Awarding Plaintiffs damages in an appropriate amount, including compensatory and punitive
h. Permanently enjoining the Defendants, their agents, successors, officials, and employees from engaging in policies and practices complained of herein;
I. Awarding Plaintiffs their costs in bringing this action, including a reasonable attorney's fee pursuant to Title VII, the EAJA; and the Civil Rights Attorney's fee Awards Act, 42 U.S.C. § 1988;
j. Granting Plaintiffs all of her relief to which she is entitled.

DATED this 13th day of July, 2015

Respectfully submitted
Lottie Jean Parham and Rosie Parham

Jesse L. Kearney, Ark. Bar 76062
Cross & Kearney, PLLC
P.O. Box 6606
Pine Bluff, AR 71611
(870) 536-4056
cklawoffices@aol.com

15