IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

LOTTIE JEAN PARHAM and
ROSIE PARHAM                                                                      PLAINTIFFS


v.                                         Case No. 1:15-cv-1048


HABILITATION CENTER, LLC;
MILLCREEK OF ARKANSAS; and
DOUG FREEMAN                                                                    DEFENDANTS

## MEMORANDUM OPINION

Before the Court is a motion for summary judgment filed by Defendants Habilitation
Center, LLC, Millcreek of Arkansas, and Doug Freeman (collectively referred to as "Defendants").
ECF No. 45.   Plaintiffs Lottie Jean Parham and Rosie Parham (collectively referred to as
"Plaintiffs") have filed a response in opposition to the motion.  ECF No. 57.  Defendants have
replied.  ECF No. 63.  The Court finds this matter ripe for its consideration.  For the reasons stated
herein, Defendants' motion for summary judgment will be granted.

## I. BACKGROUND

Habilitation Center, LLC, owns and operates Millcreek of Arkansas ("Millcreek"), a
private residential facility that provides psychiatric care and educational services for children and
adolescents in Fordyce, Arkansas.   Millcreek houses its patients in a number of residential
communities, and each community is staffed by Developmental Trainers and a Unit Coordinator.

Lottie Parham ("L. Parham") and Rosie Parham ("R. Parham") are African-American
women that were formerly employed at Millcreek. L. Parham was hired by Millcreek in 1989 as a
Developmental Trainer.   L. Parham voluntarily left Millcreek in 2007 and was rehired as a
Developmental Trainer in 2008.  During her second tenure at Millcreek, L. Parham received

several promotions, and eventually became a Unit Coordinator. R. Parham was first hired by Millcreek in August 1993 as a Developmental Trainer at Boys Ranch and remained in that position during her tenure at Millcreek. Throughout the duration of their employment with Millcreek, both Plaintiffs were assigned to Boys Ranch, a facility at Millcreek that houses small and adolescent boys.

In 2011, Plaintiffs were terminated from their positions at Millcreek as the result of an alleged altercation between another Millcreek staff member and a patient housed at Boys Ranch (hereinafter referred to as "Patient X"). The events surrounding Plaintiffs' terminations are a major point of contention between the parties, as the parties disagree over whether the staff member and Patient X were involved in an altercation; whether Plaintiffs witnessed the alleged altercation; and whether Plaintiffs fulfilled their obligations to report the incident as required by company policy and Arkansas law.

On September 28, 2011, Patient X and another Boys Ranch patient were involved in a fight, according to Plaintiffs' version of events. Two of the Developmental Trainers at the scene, Chanelle Miller ("Miller") and Latasha Rochell ("Rochell"), intervened and separated the two patients. As told by Plaintiffs, Miller and Rochell continued to keep the children separated, Patient X became more agitated, and R. Parham left the scene to prepare a spot to safely subdue Patient X per Millcreek's policy. Plaintiffs assert that R. Parham was too far from the scene to witness the altercation, and when she returned from making preparations, she witnessed Patient X walking away from the Boys Ranch facility. According to Plaintiffs, the staff eventually returned Patient X to the facility.

According to Defendants, Bobby Ozment ("Ozment") and Charles Potter ("Potter"), two maintenance aides at Millcreek, saw a staff member strike Patient X. The parties do not dispute

that Ozment and Potter approached L. Parham and informed her that they witnessed a staff member striking a patient at Boys Ranch.   L. Parham did not report the allegations to her immediate supervisor, Veronica Eddington ("Eddington") and, instead, drove to Boys Ranch to investigate. It is undisputed that while L. Parham was driving to Boys Ranch to question employees about what happened, the maintenance men reported the incident to their supervisor, Duane Brewer.  In turn, Brewer reported the incident to Doug Freeman, Director of Performance/Risk Management ("Freeman").  It is further undisputed that, upon learning of the incident, Freeman reported it to Matthew Wiltshire ("Wiltshire"), the Chief Operating Officer at Millcreek.  Wiltshire then contacted Eddington and informed her of the incident.

L. Parham arrived at Boys Ranch to investigate and informed the staff of what Ozment and Potter reported to her.  Staff told L. Parham that Patient X and another patient were involved in an altercation, according to Plaintiffs.  L. Parham told the staff that she was going to file a report with Eddington and left Boys Ranch for the supervisor's station soon thereafter.  As L. Parham was driving, she received a phone call from Eddington regarding the alleged altercation.

Later that day, Freeman and Eddington arrived at Boys Ranch to investigate the incident. Patient X was interviewed by Freeman and Eddington.  During the interview, Patient X informed Freeman and Eddington that Miller struck him because he "jumped on her back and pulled her hair."  Freeman and Eddington then obtained written witness statements from Ozment and Potter, as well as from staff members that were present at Boys Ranch when the incident occurred: R. Parham, Miller, Rochell, and Dorothy Buchanan.  The statements provided by Ozment and Potter state that they witnessed a female staff member striking a patient at Boys Ranch, and other staff members attempting to break up the altercation.  The statements provided by R. Parham, Miller, and Rochell stated that an altercation occurred between two Boys Ranch patients and staff

intervened to break it up. Statements were also obtained from L. Parham, Eddington, and students that were present during the incident. Freeman directed a staff nurse to inspect Patient X during the investigation.

Defendants assert that Freeman and Eddington ultimately concluded that Patient X, Potter, and Ozment were telling the truth and did not find Miller, Rochell or R. Parham to be credible. Freeman subsequently informed Wiltshire of the investigation and his conclusion that Miller's abuse of Patient X had occurred as reported by Patient X and the maintenance staff. Freeman also conveyed his belief that Rochell and R. Parham had witnessed the abuse and failed to report it as required by Millcreek policy.

On September 29, 2011, Freeman, Eddington and another supervisor met with R. Parham. During the meeting, Freeman asked R. Parham if she would like to recant the statement she provided regarding the altercation. R. Parham refused to recant, stating that she had no reason to do so. R. Parham was subsequently terminated. A Disciplinary Action Form provides that R. Parham was terminated for "Unsatisfactory Job Performance," and includes the following description of the incident:

> On 9/28/2011, an allegation of child abuse was made against staff, C. Miller, which is your co-worker. According to two eye witnesses and a statement from [redacted] Miller kicked and punched [redacted]. An examination by a Millcreek nurse found wounds consistent with the allegation. As a Mandated Reporter of Child Maltreatment, you are required to immediately report suspected child maltreatment. After an internal Millcreek investigation was completed, it was determined that you did not comply with Millcreek policies and Arkansas Code 12-12-507(b) required reporting of abuse.

ECF No. 64-4. In the section designated for an employee's statement, R. Parham wrote that she gave a true statement. The form appears to be signed by R. Parham.

On October 3, 2011, L. Parham was terminated from her position, as well. According to Defendants, L. Parham was dismissed for failing to report the incident to her immediate supervisor,

Eddington, as soon as she learned of the alleged altercation. Defendants further assert that it was inappropriate for L. Parham to drive to Boys Ranch and inform the employees of the impending investigation. A Disciplinary Action Form, signed by L. Parham on October 3, 2011, states as follows:

> On 9.28.11 an abusive incident occurred at Boys Ranch involving a staff [member] hitting a patient. As the Unit Coordinator, it is your responsibility to report such incidents immediately to your supervisor. On that day the staff called the supervisor's desk to report that two of the patients had been fighting. However, the incident was observed by two of the maintenance staff who then told you but you did not report it to your supervisor at that time. As a supervisor, you must uphold the integrity of Millcreek. As a result, Millcreek administration has lost confidence in your ability to be an effective supervisor.

ECF No. 59-3, p. 29.

Sometime later, Rochell met with Freeman, Wiltshire and other members of Millcreek's management. During the meeting, Rochell recanted her original statement and said that she witnessed Miller strike Patient X. According to Defendants, Rochell acknowledged that she and R. Parham witnessed the altercation between Miller and Patient X.

On July 17, 2015, Plaintiffs filed the present action against Defendants for declaratory, injunctive, and monetary relief. Plaintiffs' Amended Complaint, filed on May 2, 2016, alleges that Defendants subjected them to unlawful discrimination on the basis of race in job assignments, promotions, employment conditions and benefits, discipline and discharge in violation of 42 U.S.C. § 1981 and the Arkansas Civil Rights Act ("ACRA"). ECF No. 27. In addition, the Amended Complaint alleges that Defendants retaliated against Plaintiffs, in violation of § 1981 and the ACRA, because Plaintiffs refused to "aid and abet their superiors in discriminatory treatment of other employees based on race." ECF No. 27, ¶ 1.

On February 8, 2017, Defendants filed the instant motion for summary judgment on the basis that there is no genuine dispute as to any material fact and that they are entitled to judgment

as a matter of law. Specifically, Defendants' motion asserts that Plaintiffs' claims must be dismissed as a matter of law because Plaintiffs cannot establish that similarly situated Caucasian employees received higher pay and benefits; experienced faster advancement in pay and promotions; were afforded less oppressive work conditions; or were less likely to be fired or disciplined as a result of violating similar company policies or existing laws. In addition, Defendants assert that Plaintiffs' claims of discriminatory termination must fail because Defendants have provided a legitimate reason for terminating Plaintiffs' employment, and Plaintiffs cannot prove pretext. Lastly, Defendants maintain that Plaintiffs' retaliation claim must fail because Plaintiffs cannot establish that they engaged in protected activity.

## II. LEGAL STANDARD

When a party moves for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Krenik v. Cty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). This is a "threshold inquiry of . . . whether there is a need for trial — whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); s*ee also Agristor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id*. at 252.

The Court must view the evidence and the inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of

material fact and that it is entitled to judgment as a matter of law. *Id.* The nonmoving party must

then demonstrate the existence of specific facts in the record that create a genuine issue for trial.

*Krenik*, 47 F.3d at 957. A party opposing a properly supported motion for summary judgment

may not rest upon mere allegations or denials, but must set forth specific facts showing that there

is a genuine issue for trial. *Anderson*, 477 U.S. at 256.

## II. DISCUSSION

Plaintiffs assert race discrimination claims against Defendants pursuant to 42 U.S.C. §

1981 and the ACRA. In determining whether to grant Defendants' summary judgment motion,

the Court must analyze Plaintiffs' ACRA and § 1981 claims under the same standard as Title VII

claims. *Brown v. Tyson Foods*, 36 F. Supp. 3d 810, 815 n.1 (W.D. Ark. 2014) (internal citations

omitted). Thus, a plaintiff asserting an employment discrimination claim may survive a motion

for summary judgment by offering proof of "direct evidence of discrimination." *Torgerson v. City

of Rochester*, 643 F.3d 1031, 1044 (8th Cir. 2011). "[I]f the plaintiff lacks evidence that clearly

points to the presence of an illegal motive, he must avoid summary judgment by creating the

requisite inference of unlawful discrimination through the *McDonnell Douglas* analysis, including

sufficient evidence of pretext." *Id.*

### A. Discriminatory Termination

#### 1. Direct Evidence Analysis

Defendants first argue that Plaintiffs have failed to offer direct evidence of racial

discrimination with regard to their terminations from Millcreek. For purposes of proving racial

discrimination in employment, "[d]irect evidence is evidence that establishes 'a specific link

between the discriminatory animus and the challenged decision, sufficient to support a finding by

a reasonable fact finder that an illegitimate criterion actually motivated the employer's decision.'"

*Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 933 (8th Cir. 2006) (quoting *Putman v. Unity Health Sys.*, 348 F.3d 732, 735 (8th Cir.2003)). "To be entitled to direct evidence analysis, the plaintiff must present evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude sufficient to permit the factfinder to infer that that attitude was more likely than not a motivating factor in the employer's decision." *Stoner v. Arkansas Dep't of Corr.*, 983 F. Supp. 2d 1074, 1094 (E.D. Ark. 2013) (quoting *Rivers–Frison v. Se. Mo. Cmty. Treatment Ctr.*, 133 F.3d 616, 619 (8th Cir.1998)). The Eighth Circuit has established that "[d]irect evidence is distinguished from stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process." *Elam v. Regions Fin. Corp.*, 601 F.3d 873, 878 (8th Cir. 2010) (internal citations and quotations omitted). "When a plaintiff provides direct evidence of discrimination, the three-part *McDonnell Douglas* analysis is unnecessary." *Arraleh v. Cnty. of Ramsey*, 461 F.3d 967, 974-75 (8th Cir. 2006).

Plaintiffs contend that they have offered direct evidence of racial discrimination with regard to their terminations. As direct evidence, Plaintiffs cite to their substituted and revised declarations, which were filed with the Court on May 18, 2017. ECF Nos. 61 and 62. R. Parham's declaration primarily explains her version of the events leading up to her termination. In short, R. Parham's declaration states that she did not witness the alleged altercation involving Miller and Patient X, and that she provided her superiors with a witness statement to that effect. ECF No. 62, ¶¶ 34-35. In addition, R. Parham maintains that her duty to report the incident was met because Rochell called her immediate supervisor to report the incident. ECF No. 62, ¶ 32.

R. Parham's declaration further provides that she was fired after she refused to change her witness statement. ECF No. 62, ¶ 36. According to R. Parham, the initial termination paperwork

she received indicated that she was terminated for unsatisfactory job performance and, days later, she received another document which stated that she had been terminated for her failure to report the incident. ECF No. 62, ¶¶ 55-56. R. Parham's declaration asserts that Freeman chose not to believe her statement because she is African-American and notes that Freeman, Patient X and the maintenance aides are all Caucasian. ECF No. 62, ¶ 58. In addition, R. Parham's declaration cites numerous instances of African-American employees being treated less favorably than their Caucasian counterparts during her tenure at Millcreek. ECF No. 62, ¶ 59. For instance, R. Parham's declaration provides several instances in which Caucasian employees were not terminated for maltreatment of patients or failing to report maltreatment. *Id*. The declaration further provides an example of a Caucasian employee who tested positive for illegal substances that was not fired, while African-Americans who tested positive for illegal substances were fired. *Id*.

Similarly, L. Parham's declaration mostly offers her version of the events leading up to her dismissal from Millcreek. L. Parham's declaration provides that she was returning to the office when she was approached by two maintenance workers. ECF No. 61, ¶ 16. According to L. Parham, the maintenance workers informed her that they witnessed a staff member "beating a kid." *Id*. After learning of the alleged incident, the declaration states that L. Parham informed a coworker of what she was told and asked the coworker to inform L. Parham's direct supervisor, Eddington, of the event. ECF No. 61, ¶¶ 18-19.

The declaration provides that L. Parham subsequently arrived at Boys Ranch to investigate the incident and spoke with staff. ECF No. 61, ¶ 19. L. Parham's declaration states that she was informed that there was an altercation between Patient X and another child. ECF No. 61, ¶ 21. L. Parham replied that she did not know what happened and warned that "everybody better tell [the]

truth," according to the declaration. *Id.* The declaration further provides that L. Parham physically inspected Patient X and found no signs of physical injury. ECF No. 61, ¶ 22. However, L. Parham's declaration later notes that a nurse inspected Patient X and concluded that he had been physically injured. ECF No. 61, ¶ 28.

L. Parham's declaration provides that Freeman later interviewed Patient X, and that Patient X eventually stated that he was kicked by Miller. ECF No. 61, ¶ 24. Freeman and Eddington later directed each of the employees to provide witness statements regarding the incident, according to the declaration. ECF No. 61, ¶ 29. L. Parham's declaration notes the differences between the statements provided by the employees: the two maintenance aides claimed that they witnessed a staff member assault Patient X while other employees stated that another child struck the patient. ECF No. 61, ¶¶ 31-34. L. Parham's witness statement recalled that the maintenance aides saw a staff member striking a patient and requested that she handle it. ECF No. 61, ¶ 37; ECF No. 59, p. 2.

According to the declaration, L. Parham was approached later by Freeman and other superiors regarding her witness statement. ECF No. 61, ¶ 43. During the meeting, Freeman informed L. Parham that she failed to note that Patient X had bruises and other injuries as a result of the alleged altercation in her witness statement. ECF No. 61, ¶ 44. L. Parham told Freeman that she did not write those details in her statement because she did not see them, according to the declaration. *Id.* L. Parham was subsequently terminated from her position. *Id.*

Similar to R. Parham, L. Parham's declaration alleges that Millcreek has engaged in a "pattern and practice" of discriminating against African-American employees. ECF No. 61, ¶45. In sum, L. Parham's declaration provides statistical evidence demonstrating that between 2000 and 2011, African-Americans have been investigated and terminated for client maltreatment and

failure to report infractions at higher rates than their Caucasian counterparts. *Id.* L. Parham's declaration also provides that there were nine employees that were hired at the same time as Plaintiffs, six African-American and three Caucasian. *Id.* According to the declaration, all six African-American workers remain in direct care services while the Caucasian employees are administrators or managers. *Id.* Lastly, the declaration details L. Parham's belief that Freeman "demonstrated his racial bias" towards L. Parham, R. Parham and other African-American employees because he screamed at them on several occasions during the investigation and was "offensive, inconsiderate, unprofessional, and . . . rude." ECF No. 61, ¶ 48.

Upon consideration of the evidence presented, the Court concludes that Plaintiffs have failed to offer direct evidence of racial discrimination as to their terminations. Specifically, Plaintiffs have not offered evidence of conduct or statements made by Defendants that would allow a reasonable fact finder to conclude that a discriminatory motive was behind the decision to terminate Plaintiffs. Accordingly, the Court will analyze Plaintiff's claims under the *McDonnell Douglas* burden-shifting analysis.

## 2. Indirect Evidence Analysis

Where, as in the present case, Plaintiffs lack direct evidence of discrimination, Plaintiffs may still survive summary judgment by "creating an inference of unlawful discrimination" through the three-part burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). *Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 953 (8th Cir. 2012). Under this familiar three-step framework, Plaintiffs bear the initial burden of establishing a *prima facie* case of race discrimination. *Ramlet v. E.F. Johnson Co.*, 507 F.3d 1149, 1153 (8th Cir. 2007). To establish a *prima facie* case of race discrimination under the *McDonnell Douglas* analysis, Plaintiffs must show that: (1) they are members of a protected class; (2) they

were meeting their employer's legitimate job expectations; (3) they have suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination (for example, similarly situated employees outside the protected class were treated differently). *Gibson v. Am. Greetings Corp*. 670 F.3d 844, 854-55 (8th Cir. 2012) (internal quotation and citation omitted). If Plaintiffs successfully establish a *prima facie* case, the burden then shifts to Defendants to articulate a legitimate, non-discriminatory reason for terminating Plaintiffs' employment. *Cronquist v. City of Minneapolis*, 237 F.3d 920, 924 (8th Cir. 2001). If Defendants articulate such a reason, Plaintiffs must demonstrate by a preponderance of the evidence that the stated non-discriminatory reason was a mere pretext for discrimination. *Id*.

### a. *Prima Facie* Case

In the present case, Defendants argue that Plaintiffs have not established a *prima facie* case of discrimination regarding their terminations because Plaintiffs have failed to prove that the circumstances of their terminations create an inference of discrimination. Specifically, Defendants take the position that none of the employees that Plaintiffs have named as comparators are similarly situated as a matter of law. Defendants first point to paragraph 21 of Plaintiffs' Amended Complaint, which includes the names of Caucasian employees "who violated or were accused of violating the same or similar regulations [but] were not discharged," and argue that many of those listed are African-American. According to Defendants, Plaintiffs' deposition testimony reveals that only nine of the twenty-two employees listed are actually Caucasian: Gary Ramis, Candace Davis, Wanda Stringfellow, Barbara Hall, Mike Gatling, Amy (last name unknown), David (last name unknown), Charles Potter, and Bobby Ozment. *See* ECF No. 45-2, p. 160-162; ECF No. 45-1, p. 111.

In addition, Defendants contend that none of the individuals listed as comparators in the

Amended Complaint can be considered similarly situated employees outside of Plaintiffs' protected class that were treated in a different manner than Plaintiffs. Defendants take the position that the only Caucasian employees that could plausibly be considered to be similarly situated to Plaintiffs are Potter and Ozment, the two above-mentioned maintenance men, as they were involved in the situation that led to Plaintiffs' termination. Defendants maintain that neither of these individuals were terminated because they complied with Millcreek's reporting guidelines.

In response, Plaintiffs argue that they have established a *prima facie* case of discrimination and maintain that their evidence demonstrates that an "inference can . . . be made that the same management actors treated similarly situated white employees more favorably than they treated black employees with regard to terms and conditions of employment, hiring and firing." ECF No. 58, p. 14. Although Plaintiffs admit that "the positions and circumstances are not all identical," Plaintiffs contend that the record reflects that Millcreek engaged in a clear pattern of disparate treatment "in cases involving discipline of employees for not reporting suspected maltreatment, or discipline of employees because they deny knowing facts in an investigation." ECF No. 58, p. 14-15.

Plaintiffs first draw the Court's attention to several specific instances in which African-American employees were purportedly treated less favorably than their Caucasian counterparts. Plaintiffs assert that, based on the pattern of job decisions presented, Plaintiffs' have demonstrated a *prima facie* case of discrimination with regard to Plaintiffs' terminations.

In addition, Plaintiffs have proffered multiple exhibits into evidence which identify employees who were terminated from Millcreek for abuse or failure to report abuse. First, Plaintiffs have submitted a Discharge Summary of employees who were terminated between the years 2000 and 2010. ECF No. 59-21. The summary provides the name, race, job title and gender

of each terminated employee, as well as the date each employee was terminated and the reason for their dismissal.  According to Plaintiffs, this summary demonstrates that 86% of employees terminated for client maltreatment or failure to report during this time period were African-American, as opposed to only 14% Caucasian.  Plaintiffs also maintain that, of the three employees that were terminated for failure to report during this period, two were African-American and only one was Caucasian.

Plaintiffs have also proffered a discharge summary of employees that were terminated for abuse or failure to report abuse for the year 2011.  ECF No. 59-22.  According to Plaintiffs, Freeman was the Director of Performance during this period.  The 2011 Discharge Summary provides the name, race, gender, termination date, program, and job title for each individual employee who was terminated for abuse or failure to report abuse.  In addition, the 2011 summary provides the reason for the termination and a description of the incident.  Plaintiffs note that none of the employees who were terminated for abuse or failure to report abuse in 2011 were Caucasian.  Plaintiffs further contend that, of the two individuals who were terminated for failure to report, each of the terminated individuals had other "significant . . . pre-existing" infractions in their records, unlike Plaintiffs.

Lastly, Plaintiffs cite to two investigative reports from 2008 and 2009.  ECF Nos. 59-23 and 59-24.  Plaintiffs assert that the 2009 investigative report demonstrates that the vast majority of employees investigated for abuse were African-American, and none of the investigated employees were fired for the infraction.  Similarly, Plaintiffs note that in 2008, none of the employees that were investigated for abuse were Caucasian, and none of the investigations found evidence of abuse.

Defendants contend that Plaintiffs have failed to present proper comparator evidence and,

instead, point to "raw statistics" that are not probative of the reason that Plaintiffs were terminated. Defendants maintain that Plaintiffs have failed to illustrate whether any of the employees were similarly situated in all relevant respects. In addition, Defendants assert that none of the statistics illustrate that any employees outside of Plaintiffs' respected class received more favorable treatment.

Based upon the arguments set forth in the parties' briefs, the parties dispute whether the circumstances surrounding Plaintiffs' terminations give rise to an inference of discrimination. To satisfy the fourth element of the *prima facie* test, Plaintiffs "bear the burden of proving by a preponderance of the evidence that that there were individuals similarly situated in all respects to [them] who were treated differently." *Gilmore v. AT & T*, 319 F.3d 1042, 1046 (8th Cir. 2003) (citing *Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000)). "The individuals used as comparators must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Id*. In addition, the individuals used for comparison must have held the same position. *Fercello v. Cnty. of Ramsey*, 612 F.3d 1069, 1082 (8th Cir. 2010).

After a careful review of the evidence, the Court concludes that Plaintiffs have failed to establish a *prima facie* case of discrimination, as Plaintiffs have failed to demonstrate that the individuals used as comparators were similarly situated in "all respects." Many of the individuals that Plaintiffs identify as comparators either did not hold the same position as Plaintiffs or were accused of engaging in conduct that is substantially different from the conduct used as the basis for Plaintiffs' terminations. Moreover, Plaintiffs have offered no evidence to establish that any of the aforementioned comparators dealt with the same supervisor.

Further, the 2000-2010 discharge summary fails to establish whether any of the disciplined

employees dealt with the same supervisor. Likewise, while Plaintiffs contend that Freeman was the Director of Performance in 2011, it is not immediately clear from the record whether Freeman was involved in the decisions to terminate any of the employees listed in the 2011 discharge summary. The aforementioned evidence does not provide an evidentiary basis by which the Court can compare Plaintiffs with similarly situated employees outside of Plaintiffs' protected class that were treated more favorably. Accordingly, the Court finds that Plaintiffs have failed to establish a *prima facie* case of race discrimination with regard to their terminations.

**b. Legitimate, Nondiscriminatory Reason and Pretext**

Assuming, *arguendo*, that Plaintiffs have made out a *prima facie* case, the Court must then determine whether Defendants have offered a legitimate, nondiscriminatory reason for their action. If they have done so, the burden shifts back to Plaintiff to show that Defendants' offered reason was merely a pretext for discrimination.

"The burden to articulate a nondiscriminatory justification is not onerous, and the explanation need not be demonstrated by a preponderance of the evidence." *Torgerson*, 643 F.3d at 1047 (internal quotation omitted). Defendants' burden "is one of production, not persuasion; it can involve no credibility assessment." *Twymon*, 462 F.3d at 935. It is well established that "violating a company policy is a legitimate, non-discriminatory rationale for terminating an employee." *Id.*

In the present case, Defendants state that R. Parham was terminated because she witnessed patient abuse and failed to report it as mandated by company policy. Defendants further assert that L. Parham was terminated for failing to report the incident to her supervisor as required by company policy and state law. In addition, Defendants maintain that L. Parham interfered with the investigation of the incident and was terminated because she could no longer be trusted as a

Millcreek employee.

The Court finds that Defendants have met their burden of articulating a nondiscriminatory justification for terminating Plaintiffs. Because Defendants have made such a showing, the burden shifts back to Plaintiffs to show that Defendants' articulated reasons are merely a pretext for discrimination. "To prove pretext, a plaintiff must both discredit an employer's asserted reason for termination and show that the circumstances permit drawing the reasonable inference that the real reason for terminating the plaintiff was her race." *Twymon*, 462 F.3d at 935 (citing *Johnson v. AT & T Corp.*, 422 F.3d 756, 763 (8th Cir.2005)).

Plaintiffs argue that Defendants have not articulated a legitimate, nondiscriminatory reason for terminating Plaintiffs on the basis that Defendants have offered differing rationales for their terminations. Plaintiffs further refute Defendants' assertion that R. Parham was fired for witnessing the alleged incident and failing to report it because some of the children who were present "reported that the events did not occur as Freeman concluded they occurred." ECF No. 58, p. 15. With regard to L. Parham, Plaintiffs argue that there is no evidence that L. Parham obstructed an investigation and failed to report maltreatment. Thus, according to Plaintiffs, no credence should be given to Defendants' proffered reasons for Plaintiffs' terminations, especially "in light of a pattern of belittling and second-guessing black employees." *Id*.

The Court disagrees with Plaintiffs' arguments. Assuming *arguendo* that the reasons for terminating Plaintiffs were erroneous, Plaintiffs have offered no evidence to demonstrate that Defendants did not believe that Plaintiffs violated company policy when the decision was made to terminate their employment. "A proffered legitimate, non-discriminatory reason for termination need not, in the end, be correct if the employer honestly believed the asserted grounds at the time of the termination." *Twymon*, 462 F.3d at 935. "Federal courts do not sit as a super-personnel

department that reexamines an entity's business decisions." *Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 973 (8th Cir. 1994) (citing Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991)). "Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior." *Id.*

Because Plaintiffs have failed to offer evidence to show that Defendants' proffered reasons for terminating their employment are unworthy of credence, Plaintiffs' argument must fail. In addition, the Court finds that Plaintiffs have offered no facts to create a reasonable inference that Plaintiffs were terminated because of their race. For the foregoing reasons, the Court finds that summary judgment is warranted on Plaintiffs' claims of race discrimination pursuant to § 1981 and the ACRA.

### B. Discriminatory Job Assignments, Promotions, Conditions, and Benefits

#### 1. Wage Discrimination

Next, Defendants argue that Plaintiffs have offered no direct or indirect evidence relating to their claim of racial discrimination in "job assignments, promotions, and employment conditions and benefits." According to Defendants, Plaintiffs' claim of such discrimination is refuted by their deposition testimony. Defendants cite to R. Parham's deposition testimony and note that she testified she received pay increases throughout her tenure with Millcreek and never complained about the amount of her raises. Furthermore, Defendants point out that R. Parham testified she did not seek any promotions during her time with Millcreek and, on at least one occasion, refused to accept a promotion. With regard to L. Parham, Defendants cite a portion of her deposition in which she testified that she did not witness any discrimination or believe she was treated unfairly with respect to promotions or pay raises prior to her termination.

In response, Plaintiffs do not offer a structured legal argument supporting their claims of

racial discrimination in job assignments, promotions, employment conditions and benefits. Instead, Plaintiffs sporadically make assertions alleging salary discrimination and failure to promote on the basis of race throughout their brief and make citations to the record in support of their claims.

After a careful review of Plaintiffs' brief and the evidence submitted, the Court concludes that many of the assertions made in Plaintiffs' briefs are not accurately cited. For instance, Plaintiffs maintain that R. Parham has "specific knowledge of numerous examples [of] white employees receiving better treatment, higher pay, and more benefits than black employees." ECF No. 58, p. 10. Plaintiffs cite to paragraphs "65(A)-(L)" and "65(K)" of R. Parham's declaration in support of this position. *Id*. However, paragraph 65 of R. Parham's declaration references L. Parham's dispute with Freeman leading up to her termination. ECF No. 62, ¶ 65.

Plaintiffs also cite paragraph 76 of R. Parham's declaration, which asserts that R. Parham "noticed a pattern of white employees with less seniority or rank being paid more than . . . senior or supposedly higher ranked black employees." ECF No. 58, p. 11. However, neither of the proffered declarations contain a paragraph 76 nor provide any evidence for this claim. ECF No. 62, p. 12. In addition, while Plaintiffs contend that L. Parham applied for and was denied a position for "ICF/MR transportation," the citations provided in Plaintiffs' brief do not support this claim, and no evidence has been entered into the record to support this assertion.[1] ECF No. 61, ¶ 11.

Plaintiffs' Amended Complaint alleges that certain Caucasian job applicants and employees with similar or less training and experience than Plaintiffs were hired and started at higher pay and benefits than Plaintiffs. ECF No. 27, ¶ 12. In addition, Plaintiffs' Statement of

---

[1] Plaintiffs' brief cites to page 25 of L. Parham's deposition and page 4 of Plaintiffs' exhibit 5. However, neither of the parties submitted page 25 of L. Parham's deposition. In addition, the page of the exhibit cited to in Plaintiffs' brief does not mention that L. Parham was denied a promotion. *See* ECF No. 59-5, p. 4.

Facts includes an assertion regarding job assignments, promotions, employment conditions and benefits which accurately cites to the portion of the record upon which they rely. Plaintiff R. Parham compares herself to one non-minority coworker, Gary Raney, a Caucasian male who, like R. Parham, was employed as a Developmental Trainer. Plaintiffs argue that Raney was paid more than R. Parham and Deborah Cornelius, an African-American woman employed as a Unit Coordinator. [2]

In light of the allegations set forth in Plaintiffs' Amended Complaint and the assertions made in their responsive brief and Statement of Facts, the Court assumes that Plaintiffs are asserting a claim of salary discrimination pursuant to § 1981 and the ACRA. As previously stated, Plaintiffs' ACRA and § 1981 claims are analyzed under the same standard as Title VII claims. Thus, to establish a *prima facie* case of salary discrimination, Plaintiffs bear the initial burden of showing that Defendants paid different wages to employees of different races for "equal work on jobs the performance of which requires skill, effort, and responsibility, and which are performed under similar working conditions." *Tademe v. Saint Cloud State Univ*., 328 F.3d 982, 989 (8th Cir. 2003) (quoting *Sowell v. Alumina Ceramics, Inc.*, 251 F.3d 678, 682 (8th Cir. 2001)). "Determining whether two jobs require equal skill, effort, or responsibility requires a practical judgment of all relevant facts and circumstances. *Id*. (citing *Buettner v. Arch Coal Sales Co*., 216 F.3d 707, 719 (8th Cir. 2000)). "Requisite skill is measured by such factors as education, training, experience, and ability." *Id*.

In the present case, the Court finds that Plaintiffs have failed to establish a *prima facie* case

---

[2] Plaintiffs make a similar allegation that Mike Gatling, a Caucasian male Direct Trainee, was being paid more than Beverly Tate, an African-American female Milieu Coordinator, and cite to R. Parham's declaration and deposition in support of this assertion. ECF No. 59, p. 17. However, Plaintiffs have failed to include the cited deposition testimony, and R. Parham's declaration does not reference Gatling.

of salary discrimination on the basis of race.  Although Plaintiff R. Parham compares herself to Raney and asserts that he was paid more despite the two holding the same position, Plaintiffs have offered no evidence regarding similarities between R. Parham and Raney's skills, such as education, training, experience and ability.  Instead, Plaintiffs cite to a conclusory statement made in R. Parham's deposition testimony regarding the discrepancy in pay between herself, Raney and Cornelius.  Such evidence is insufficient to create a genuine issue of fact to survive a summary judgment motion.  *See Sowell*, 251 F.3d at 683-684.  Accordingly, summary judgment is warranted with regard to Plaintiffs' wage discrimination claim.

### 2. Discriminatory Failure-to-Promote

Next, Plaintiffs' Amended Complaint alleges that they were subjected to discriminatory treatment with regard to promotions.  Plaintiffs' Amended Complaint specifically asserts that they were "passed over for job vacancies which would have been promotions . . . during their employment."  ECF No. 27, ¶ 26.  In support of this contention, Plaintiffs have identified several instances in which they believe they were wrongfully denied promotions.  First, L. Parham asserts that she applied for the position of Milieu Coordinator in early 2010, but Eddington was ultimately selected.  ECF No. 58, p. 11.  L. Parham asserts that in August 2010, she applied for a position at "MCF/MR transportation," but was not selected.  ECF No. 58, p. 11.  In addition, Plaintiffs contend that R. Parham requested and was assigned the job of unit shift coordinator.  ECF No. 59, ¶ 2.  According to Plaintiffs, R. Parham served in this capacity temporarily and was never permanently hired in that position.  *Id*.

Based upon the assertions made in Plaintiffs' Amended Complaint, as well as their declarations and Statement of Facts, the Court assumes that Plaintiffs are attempting to assert a discriminatory failure-to-promote claim.  As previously stated, Defendants assert that Plaintiffs

have offered no direct or indirect evidence of such discrimination. The Court agrees that Plaintiffs have offered no direct evidence of such discrimination and, therefore, the *McDonnell Douglas* framework is applicable.

"The elements of the *prima facie* case for a failure-to-promote claim are well established: The plaintiff must demonstrate (1) that she is a member of a protected group; (2) that she was qualified and applied for a promotion to a position for which the employer was seeking applicants; (3) that despite her qualifications, she was rejected; and (4) that other employees of similar qualifications who were not members of a protected group were promoted at the time plaintiff's request for promotion was denied." *Lyoch v. Anheuser-Busch Companies, Inc.,* 139 F.3d 612, 614 (8th Cir. 1998) (internal citations and quotations omitted).

Upon consideration, the Court finds that Plaintiffs' failure-to-promote claims must fail. First, Plaintiffs have not offered any evidence to demonstrate that they were qualified for the positions that they were seeking. In addition, Plaintiffs have failed to offer evidence regarding whether employees outside of their protected group with similar qualifications were promoted at the time Plaintiffs' requests for promotion were denied. Plaintiffs have only presented evidence that L. Parham applied for the position of Milieu Coordinator, and that Eddington was ultimately hired for that position. However, it appears to be undisputed by the parties that Eddington is an African-American female.

In sum, the Court concludes that summary judgment is appropriate with regard to Plaintiffs' claims of racial discrimination with regard to job assignments, promotions, and employment conditions and benefits.

**D. Retaliation**

Next, Defendants argue that summary judgment should be granted in their favor with regard to Plaintiffs' retaliation claims. Retaliation claims brought pursuant to the ACRA and § 1981 are subject to the same analysis as Title VII retaliation claims. *Burkhart v. American Railcar Indus., Inc.*, 603 F.3d 472, 476-77 (8th Cir. 2010) ("We analyze [the plaintiff's] Title VII and ACRA retaliation claims in the same manner."); *Sayger v. Riceland Foods, Inc.*, 735 F.3d 1025, 1030 (8th Cir. 2013) (holding that courts apply the same analysis for § 1981 and Title VII retaliation claims). The Eighth Circuit has established that "the *McDonnell Douglas* burden-shifting analysis governs the order and allocation of proof for retaliation claims." *Logan v. Liberty Healthcare Corp.*, 416 F.3d 877, 880 (8th Cir. 2005) (internal citation and quotations omitted).

Under the *McDonnell Douglas* analysis, "a plaintiff must first establish a *prima facie* case by showing that he or she: (1) engaged in statutorily protected activity; (2) he [or she] suffered an adverse employment action, and (3) there was a causal connection between the adverse employment action and the protected activity." *Id.* (citing *EEOC v. Kohler Co.*, 335 F.3d 766, 772 (8th Cir. 2003)). "If the *prima facie* case is met, the burden shifts to the defendant to produce a legitimate, non-retaliatory reason for the action it took against the plaintiff." *Id.* If the defendant satisfies its burden, the plaintiff must then present evidence that (1) creates a question of fact as to whether defendant's reason was pretextual; and (2) creates a reasonable inference that defendant acted in retaliation. *Id.*

In this case, Plaintiffs maintain that they were subjected to retaliation when Defendants terminated their employment "because of their refusal to aid and abet their superiors in discriminatory treatment of other employees based on race."[3] ECF No. 58, p. 5. Defendants

---

[3] The Court notes that Plaintiffs' memorandum brief in opposition to Defendants' motion for summary judgment does not offer any legal arguments or authority in support of their retaliation claims.

counter that Plaintiffs have failed to establish a *prima facie* case of retaliation. Specifically, Defendants contend that neither Plaintiff engaged in protected activity prior to being terminated from Millcreek. In support of this assertion, Defendants point to Plaintiffs' depositions, wherein both Plaintiffs testified that they had not filed complaints of discrimination or harassment prior to being terminated.

In the Title VII context, protected conduct is defined by federal law, which prohibits an employer from discriminating against an employee who has opposed any practice made unlawful by Title VII, or made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under the statute. *Davis v. Jefferson Hosp. Ass'n*, 685 F.3d 675, 684 (8th Cir. 2012) (citing *Hervey v. Cty. of Koochiching*, 527 F.3d 711, 722 (8th Cir.2008)). To establish that she engaged in protected activity, "a plaintiff employee need not establish that the conduct [she] opposed was in fact prohibited under Title VII; rather [she] need only demonstrate that [she] had a 'good faith, reasonable belief that the underlying challenged conduct violated Title VII.'" *Id.* (quoting *Buettner v. Arch Coal Sales Co.*, 216 F.3d 707, 714 (8th Cir. 2000)).

The Court agrees with Defendants' contention that Plaintiffs have not established a *prima facie* case of retaliation. Specifically, the Court finds that Plaintiffs have not offered evidence showing that they were engaged in protected activity prior to their termination. Plaintiffs' own deposition testimony shows that they did not complain of racial discrimination or file a complaint alleging racial discrimination prior to being terminated. Moreover, although Plaintiffs have presented declarations detailing their unwillingness to change their witness statements, there is no evidence to indicate that Plaintiffs' refusal to do so was in opposition to any discriminatory activities conducted by Defendants. Instead, Plaintiffs stated that they refused to change their statements because they did not witness the altercation alleged to have occurred between Patient

X and another employee. Thus, there is nothing in the record to indicate that Plaintiffs reasonably believed that Defendants were engaging in discriminatory conduct. Accordingly, the Court finds that Plaintiffs have failed to establish a *prima facie* case of retaliation, and summary judgment is appropriate with regard to Plaintiffs' retaliation claims.

### III. CONCLUSION

Based on the foregoing, the Court finds that Defendant's Motion for Summary Judgment (ECF No. 45) should be and hereby is **GRANTED**. Accordingly, Plaintiffs' Amended Complaint (ECF No. 27) is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**, this 8th day of September, 2017.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge